```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DAWN CHESTNUT AND RODNEY CHESTNUT,

                Plaintiffs,          MEMORANDUM & ORDER
                                     10-CV-4244 (JS)(ARL)
        -against-

WELLS FARGO BANK, N.A.,

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiffs:    Dawn Chestnut, pro se
                   112 W. Barlett Road
                   Middle Island, NY 11953

                   Rodney Chestnut, pro se
                   112 W. Barlett Road
                   Middle Island, NY 11953

For Defendant:     Allison J. Schoenthal, Esq.
                   Renee Marie Garcia, Esq.
                   Victoria McKenney, Esq.
                   Hogan Lovells US LLP
                   875 Third Avenue
                   New York, NY 10022
```

SEYBERT, District Judge:

        Pending before the Court is Defendant Wells Fargo's motion to dismiss. For the following reasons, that motion is GRANTED.

BACKGROUND[1]

This is a foreclosure dispute. On August 10, 2005, Plaintiffs Dawn and Rodney Chestnut, pro se, obtained a home mortgage loan from Fremont Investment and Loan, which then assigned its right to repayment to Wells Fargo. In April 2006, the Chestnuts defaulted on the mortgage, though they continued to reside in the property.

In July 2006, Wells Fargo commenced foreclosure proceedings in New York Supreme Court, County of Suffolk. On February 7, 2007, the New York Supreme Court granted Wells Fargo's unopposed summary judgment motion. On July 18, 2007, the New York Supreme Court granted Wells Fargo's unopposed motion for a Judgment of Foreclosure.

---

[1] Ordinarily, this section of the Court's opinion would describe the Complaint's allegations. The Complaint, however, contains limited factual material relating to Plaintiffs' contractual dispute with Wells Fargo, or the prior state court proceedings. Instead, the Complaint largely combines legal argument with a public policy critique of the mortgage industry, and then purports to assert twenty-three separate causes of action. Consequently, the Court largely constructs this section from documents that it can take judicial notice of, such as the underlying mortgage documents, the state court records, and the related bankruptcy proceeding. See Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (in contract action, court can take judicial notice of underlying contract as a document "integral to the complaint"); Ng v. HSBC Mortg. Corp., 2010 WL 889256, at *9 n. 13 (E.D.N.Y. Mar. 10 2010) (in mortgage dispute, taking judicial notice of settlement statements); Anderson News, L.L.C. v. American Media, Inc., 732 F. Supp. 2d 389, 403 (S.D.N.Y. 2010) (on a motion to dismiss, the court can take judicial notice of prior proceedings for the purpose of considering whether collateral estoppel bars the plaintiff's claims).

On September 5, 2007, Rodney Chestnut filed a Voluntary Petition in the Bankruptcy Court seeking Chapter 13 bankruptcy. The Bankruptcy Court dismissed Mr. Chestnut's petition in December 2008.

In January 2009, Mr. Chestnut moved, pro se, to vacate the New York Supreme Court's Judgment of Foreclosure and dismiss Wells Fargo's Complaint.[2] In this motion, Mr. Chestnut raised many of the arguments that he and his wife present here, including allegations that Wells Fargo did not own the note at issue and lacked standing to sue. On August 13, 2009, the New York Supreme Court denied Mr. Chestnut's motion.

On March 23, 2010, Mr. Chestnut moved for reconsideration of the New York Supreme Court's decision. In this motion, Mr. Chestnut raised still more of the kinds of arguments he raises in this action, including allegations of predatory lending. On May 14, 2010, the New York Supreme Court denied Mr. Chestnut's motion.

On September 17, 2010, Plaintiffs commenced this action, purporting to assert twenty-three separate causes of action. Among other things, Plaintiffs assert claims for

---

[2] Ms. Chestnut did not join in her husband's motion to vacate, or his subsequent motion for reconsideration. But she remained a party to the state court proceedings, and had every opportunity to join those motions, or supplement them with her own arguments. Thus, she remains bound by the state court's decisions.

3

fraudulent inducement, unfair business practices, unjust enrichment, and violations of the Truth-In-Lending Act. Plaintiffs also purport to assert several imaginative claims that appear to have no basis in any statute or common law doctrine, including "Lender Profit by Credit Default Swap Derivatives," and "Extra Profit on Sale of Predatory Loan Product."

Wells Fargo has moved to dismiss. Wells Fargo contends that both the Rooker-Feldman doctrine and collateral estoppel bar Plaintiffs' claims. In addition, Wells Fargo argues that Plaintiffs fail to properly plead any cognizable causes of action. Plaintiffs' opposition papers address Wells Fargo's arguments that their claims are not sufficiently pled, but do not contest Wells Fargo's Rooker-Feldman and collateral estoppel arguments.

## DISCUSSION

I. Standard of Review

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor, this "tenet" is

4

"inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Ashcroft); Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC, 595 F.3d 86, 91 (2d Cir. 2010). Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). Id. Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

When considering a Rule 12(b)(1) motion to dismiss[3] for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n. 6 (2d Cir. 2001). When there is a question involving federal jurisdiction, such jurisdiction must be shown affirmatively. See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). Accordingly, the Court will not draw inferences favorable to the party asserting jurisdiction. See id.

Pro se plaintiffs enjoy a somewhat more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94, 127

---

[3] The Court considers Wells Fargo's Rooker-Feldman argument under Rule 12(b)(1), and the remainder of Wells Fargo's arguments under Rule 12(b)(6).

5

S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted). However, pro se plaintiffs must still "comport with the procedural and substantive rules of law." Javino v. Town of Brookhaven, 06-CV-1245, 2008 U.S. Dist. LEXIS 17323, at *3 (E.D.N.Y. Mar. 4, 2008).

II. Rooker-Feldman Doctrine

Wells Fargo first argues, and Plaintiffs do not dispute, that the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction.

The Rooker-Feldman doctrine applies when: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites the federal district court to review and reject that state court judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced. See Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

The Court agrees that the Rooker-Feldman doctrine applies here. It is indisputable that: (1) Plaintiffs are state court losers, having suffered a state court foreclosure judgment; (2) Plaintiffs complain of injuries caused by that state court judgment, with the "crux of [their] complaint

6

[being] that [Wells Fargo] wrongfully foreclosed on the property in question"; (3) Plaintiffs ask the Court to "restrain[]" the state court's orders, and reverse the state court's decision by "quiet[ing] title" in their favor (Compl. at p. 24); and (4) the state court judgment was rendered more than three years before Plaintiffs commenced this action. See, e.g., In re Wilson, 2011 WL 573476, at *1 (2d Cir. Feb. 18, 2011) (unpublished) (holding that Rooker-Feldman doctrine precluded attempt to re-litigate state court foreclosure judgment in federal court); Ashby v. Polinsky, 328 Fed. Appx. 20, 21 (2d Cir. 2009) (unpublished) (same); Kalamas v. Consumer Solutions Reo, LLC, 09-CV-5045, 2010 WL 4811894, at *6 (E.D.N.Y. Nov. 17, 2010) (same). Accordingly, the Court agrees that the Rooker-Feldman doctrine bars this action.

III. Collateral Estoppel

But even if, for some reason, the Rooker-Feldman doctrine does not entirely preclude this action, the Court agrees with Wells Fargo's uncontested argument that collateral estoppel bars the remaining claims. Collateral estoppel applies when: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final

7

judgment on the merits. See Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008). Here, Plaintiffs had a full and fair opportunity to litigate all issues relating to their mortgage, when Wells Fargo commenced its foreclosure action in state court. Indeed, they arguably had three such opportunities. First, they could have actively defended against Wells Fargo's foreclosure efforts by raising the causes of action they assert here as defenses, counterclaims, and/or legal arguments. Instead, they permitted Wells Fargo to obtain summary judgment and a foreclosure judgment without opposition. Next, Mr. Chestnut filed a motion to vacate the judgment that raised many of the same claims Plaintiffs assert here,[4] which the New York Supreme Court denied. Finally, Mr. Chestnut filed a motion for reconsideration that raised still more claims asserted here,[5] which the New York Supreme Court also denied. Thus, collateral

---

[4] Mr. Chestnut's motion to vacate argued, among other things, that: (1) Wells Fargo lacked standing to foreclose; (2) the mortgage's assignment to Wells Fargo was ineffective; (3) because Wells Fargo did not have proper ownership of the mortgage and promissory note, its complaint failed to state a claim; and (4) Wells Fargo failed to join the note's real owners, who were indispensible parties. These arguments correspond to Plaintiffs' first and sixth claims, and arguably the sixteenth claim as well.

[5] Mr. Chestnut's motion for reconsideration argued, among other things, that Wells Fargo engaged in: (1) "misrepresentation, fraud and deceitful tactic[s]"; and (2) predatory lending. These arguments correspond (either expressly or roughly) to Plaintiffs' third, fourth, fifth, eighth, twelfth, fourteenth, and twentieth causes of action.

estoppel bars most, and possibly all, of Plaintiffs' claims. See Estate of Keys v. Union Planters Bank, N.A., 578 F. Supp. 2d 629, 635 (S.D.N.Y. 2008) (collateral estoppel precluded plaintiff "from claiming that the foreclosure was improper, because that issue was actually litigated and actually decided by the New York State courts several times").

IV. Res Judicata

Even assuming arguendo that neither Rooker-Feldman nor collateral estoppel would entirely bar Plaintiffs' Complaint, any remaining claims would fail due to the related doctrine of res judicata. Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (internal citations and quotations omitted). Here, the state court foreclosure judgment was a final judgment on the merits, the parties were identical, and every one of Plaintiffs' claims were, or could have been, "raised as claims or defenses in the previous action." Swiatkowski v. Citibank, 10-CV-0114, 2010 WL 3951212, at *15 (E.D.N.Y. Oct. 7, 2010) (finding that res judicata barred attempt to challenge validity of mortgage or foreclosure judgment). And "[b]ecause [P]laintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for

9

foreclosure, the doctrine of res judicata bars this litigation." Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008); Mercado v. Playa Realty Corp., 03-CV-3427, 2005 WL 1594306, at *7 (E.D.N.Y. 2005) (res judicata barred plaintiffs from challenging state foreclosure judgment through "new claims" that "could have been asserted during the foreclosure action as counterclaims").

V. Failure to State a Claim

Finally, assuming arguendo that Plaintiffs face no procedural bar, nearly all of their claims are insufficiently pled.

As Wells Fargo aptly points out, five of Plaintiffs' claims are simply "made up," lacking any basis in a statutory right or a common law doctrine. See Docket No. 21 at 13 (discussing purported claims for "Up-Selling," "Extra Profit on Sale of Predatory Lending Product," "Lender Profit by Credit Default Swap Derivatives," "Business Practices Concerning Disregarding of Underwriting Standards," and "Sufficiency of Pleading"). The Complaint's TILA and RESPA claims are clearly time-barred, because Plaintiffs waited more than five years to commence this action, and fail to provide any legitimate grounds to justify equitable tolling. See 15 U.S.C. § 1640(e) (one year limitation period for TILA claims); 12 U.S.C. § 2614 (one or three year limitations period for RESPA claims, depending on

10

alleged violation). The Federal Trade Commission Act claim fails because the statute does not provide for a private right of action. See Green v. STI Prepaid, LLC, 10-CV-2180, 2010 WL 4055575, at *4 (S.D.N.Y. Oct. 18, 2010). The unjust enrichment claim fails because an express contract indisputably governs the parties' dispute. Pramer S.C.A. v. Abaplus Intern. Corp., 76 A.D.3d 89, 102, 907 N.Y.S.2d 154, 163 (1st Dep't 2010). And, except as discussed below, the remaining claims are either wholly conclusory or wholly undecipherable.

One kind of claim is sufficiency pled, if the Court ignored the glaring procedural bars: Plaintiffs' claim that Wells Fargo lacked standing to foreclose on the mortgage. Unlike the rest of Plaintiffs' claims, the standing-related claims allege facts, not simply legal conclusions. Unfortunately for Plaintiffs, however, the standing-related claims are the ones that most indisputably fall within the Rooker-Feldman, collateral estoppel, and res judicata bars. For the New York Supreme Court's August 13, 2009 Order expressly rejected Mr. Chestnut's identical standing arguments as failing to set forth "a meritorious defense to this mortgage foreclosure action."

CONCLUSION

Wells Fargo's motion to dismiss is GRANTED. The Complaint is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to mark this matter as closed.

SO ORDERED

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:     March   2  , 2011
           Central Islip, New York