

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D N Y

★ SEP 09 2011 ★

LONG ISLAND OFFICE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Rodney and Dawn Chestnut
    Plaintiffs,

    v.                    Case No. 10-CIV-4244(JS)(ARL)

Wells Fargo Bank, NA
    Defendant

---

# MOTION FOR RELIEF FROM JUDGMENT

-----------------------------------------

Rodney and Dawn Chestnut are before this court by special appearance without waiving
any rights remedies or defenses, statutory or procedural.

-----------------------------------------

### Judicial Notice to be taken Regarding Litigants without Lawyers:

The Chestnuts appear in this action "In Propria Persona" and ask that the points
and authorities relied upon herein, and issues raised herein, must be addressed "on the
merits", *Sanders v United States,* 373 US 1, at 16, 17 (1963); and addressed with "clarity
and particularity", *McCleskey v Zant*, 111 S. Ct. 1454, at 1470-71 (1991); and afforded "a
full and fair" evidentiary hearing, *Townsend v Sain,* 372 U.S.293, at p.1 (1962). See also
*Pickering v Pennsylvania Railroad Co.*, 151 F.2d 240 (3d Cir. 1945). "Pro Se Litigants
pleadings are to be construed liberally and held to less stringent standards than lawyers"
*Haines v Kerner*, 404 US 519 (1972). "Pro se litigants are entitled to certain rights not
afforded litigants with lawyers." *Signer v. Indiana University Foundation,* 741 Fed Supp
165, (S. D. Ind. 1990)

Pleadings of the Plaintiffs SHALL NOT be dismissed for lack of form or
failure of process. All the pleadings are as any reasonable man/woman would
understand, and:

"And be it further enacted.  That no summons, writ, declaration, return, process, judgment, or other proceedings in civil cases in any of the courts or the United States, shall be abated, arrested, quashed or reversed, for any defect or want of form, but the said courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects or want of form in such writ, declaration, or other pleading, returns process, judgment, or course of proceeding whatsoever, except those only in cases of demurrer, which the party demurring shall specially sit down and express together with his demurrer as the cause thereof.  And the said courts respectively shall and may, by virtue of this act, from time to time, amend all and every such imperfections, defects and wants of form, other than those only which the party demurring shall express as aforesaid, and may at any, time, permit either of the parties to amend any defect in the process of pleadings upon such conditions as the said courts respectively shall in their discretion, and by their rules prescribe (a)" *Judiciary Act of September 24, 1789*, Section 342, FIRST CONGRESS, Sess. 1, ch. 20, 1789.

"Court errs if court dismisses pro se litigant without instructions of how pleadings are deficient and how to repair pleadings." *Plaskey v CIA*, 953 F .2nd 25.  "The trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish." *Breck v. Ulmer*, 745 P.2d 66, 75 (1987).

COME NOW Plaintiffs Rodney and Dawn Chestnut and file this motion for relief from judgment or order pursuant to N.Y. Civil Practice Law & Rules, Article 50, Rule 5015 and move the court to set aside or vacate its judgment of March 4, 2011 dismissing Plaintiff's complaint.

## PARTIES

**Rodney and Dawn Chestnut** are the true owners of real property located at

112 W. Barlett Road, Middle Island, NY 11953 ("Property")

**Wells Fargo Bank, N.A. ("WFB")** is a national banking association who claims to be a

Trustee under Pooling and Servicing Agreement dated as of February 1, 2006,

Securitized Asset Back Receivables LLC Trust 2006-FR1 Mortgage Pass-through

Certificates.

## LITIGATION HISTORY

In July 2006, WFB initiated a foreclosure proceeding against the Chestnuts in the supreme Court of the State of New York, Suffolk County (the "State Court"). In July 2007, WFB obtained a judgment in foreclosure. Index No. 06-19840.

In January 2009 and March 2010, Plaintiffs tried to vacate the judgment of foreclosure by filing this lawsuit in this court.

On October 4, 2010, the Property sale was held by WFB.

On March 4, 2011, this court issued a judgment dismissing Plaintiffs' complaint with prejudice.

Plaintiffs file this motion pursuant to Rule 5015 to vacate the judgment for the reasons outlined herein.

## SUBJECT MATTER JURISDICTION

One relevant aspect of the Court's March 2, 2011 judgment is this Court's assertion that "the Rooker-Feldman doctrine deprives the court of subject matter jurisdiction."

However, this doctrine does not prevent federal district courts from reviewing allegations that individuals involved in state court proceedings engaged in fraud and misrepresentation. See Lawrence v. Welch, 531 F.3d 364, 368-69 (6th Cir. 2008) ("[P]laintiff's claims that certain defendants committed fraud and misrepresentation in the course of state probate proceedings did not allege an injury caused by the state court judgment and thus were not barred by Rooker-Feldman.").

In this case, WFB did engage in fraud and misrepresentation as it will be proven

herein.  Therefore, this court has subject matter jurisdiction to review this case anew.

Chestnuts argue that the district court erred in applying *Rooker-Feldman* to dismiss their claims.

The Supreme Court issued its decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), clarifying and restricting the doctrine's scope.

The *Exxon* decision stressed the "narrow" and "limited" application of the doctrine, holding that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The doctrine does not prevent "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction" because *Rooker-Feldman* does not apply. *Id.*
(quotations omitted).

In the wake of *Exxon*, the 6th Circuit has tightened the scope of *Rooker-Feldman*. *See Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006) ("*Rooker-Feldman* is a doctrine with only limited application"). In formulating a cogent post-*Exxon* analysis, we have distinguished between plaintiffs who bring an impermissible attack on a state court judgment — situations in which *Rooker-Feldman* applies — and plaintiffs who assert independent claims before the district court — situations in which *Rooker-Feldman* does

not apply. *McCormick*, 451 F.3d at 393.

In delineating this distinction, we noted:

> The inquiry [focuses on] the *source of the injury* the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.* (emphasis added); *see also Coles*, 448 F.3d at 858 (noting that we "have taken the Supreme Court's guidance on the application of *Rooker-Feldman* and applied the doctrine only when a plaintiff complains of injury from the state court judgment itself").

In this case, the Chestnuts have been complaining from the injuries caused by third parties such as WFB -- fraudulent actions which are now leading to attempts to evict the Chestnuts from their home.

The Chestnuts assert that this court has jurisdiction to review their case and this motion.

The Chestnuts assert that the evidence presented herein, if introduced at trial, would certainly have produced a different result and which could not have been discovered beforehand -- despite the Chestnuts' due diligence.

## **ARGUMENT**

In its March 2, 2011 judgment, the Court stated that Fremont "assigned its right to repayment to Wells Fargo."

The court judgments[1] were based on the presumption that the Assignment is valid.

However, based on the evidence presented herein, the Assignment was not valid and there was an overwhelming evidence of fraud -- and thus the court judgments were

---

[1] made in State Court Index No. 06-19840 ;  in U.S. District Court Case No.2:10-cv-04244-JS; and Supreme Court -- State of New York Index No. 19840-2006

void.

Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes "fraud," and entitles party deceived to avoid contracts or recover damages."  Barnsdall Refining Corp. v. Birnamwood Oil Co., 92 F.2d 817.

Rule 5015(3) allows a court to grant relief from judgment upon proof of fraud, misrepresentation, or other misconduct of an adverse party.

The evidence presented herein proves that WFB committed fraud, misrepresentation, and other misconduct which would justify for the court to vacate its judgment of March 4, 2011 (Document # 33).


## A.    THE BENEFICIARY MUST HAVE THE RIGHT TO ENFORCE THE SECURED OBLIGATION

WFB lacked the right to enforce the secured obligation to initiate a foreclosure sale.

The Restatement (Third) of Property (Mortgages) Section 5.4(a) (1997) provides that:

> "[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."

The Restatement cites the case of *Carpenter v. Longan*, 83 U.S. 271 (1827) which held that "[a]ll the authorities agree that the debt is the principal thing and the mortgage an accessory."

The comments to Section 5.4(a) state:

> e.    *Mortgage may not be enforced except by a person having the right to*

*enforce the obligation or one acting on behalf of such a person.* As mentioned, in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation. For example, assume that the original mortgagee transfers the mortgage alone to A and the promissory note that it secures to B. Since the obligation is not enforceable by A, A can never suffer a default and hence cannot foreclose the mortgage. B, as holder of the note, can suffer a default. However, in the absence of some additional facts creating authority in A to enforce the mortgage for B, B cannot cause the mortgage to be foreclosed since B does not own the mortgage.

The stated objective of the Restatement is to avoid economic waste to the lender and a windfall to the borrower if the note and mortgage are split rendering the mortgage note as a practical matter unsecured.

The Pooling and Servicing Agreement ("PSA") for the securitized Trust 2006-FR1 requires endorsement of instrument being transferred to the Trust.

According to the Restatement, the mortgage follows the note and thus has no life separate from that of the underlying obligation.

However, no endorsement of the Note to WFB is proven to exist in this case.

The requirement of a writing evidencing the transfer of the security interest in land is lacking.

Therefore, the Note is unsecured and unenforceable and WFB lacks authority for its enforcement or to initiate a sale.

**B.    THE ASSIGNMENT**

The "Assignment of Mortgage" (hereinafter "Assignment") was introduced as Exhibit D to the "Declaration of Renee Garcia" (Document #17, filed 10/14/10).

There are two possibilities:  (1) The Assignment is valid; or (2) the Assignment is invalid.

***The First Possibility: If the Assignment is valid***

The Assignment claims that: "This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market."[2]

In the secondary market, a mortgage originator assigns a mortgage to an appointed third-party SERVICER while the mortgage note is transferred to the actual INVESTOR.  In this situation, the agreement and intent of the parties is for the investor to be the owner of both the mortgage and mortgage note despite the assignment of the mortgage to the servicer.

In this case, the Assignment was allegedly made from MERS to WFB -- allegedly in the secondary market.

If the assignment is valid, which is not as will be proven herein, then WFB would be the  servicer and the certificate holders of the Series 2006-FR1 Trust would be the investors and owners of both the mortgage and note.

However, in this case, WFB's Exhibit D claimed that the assignment of mortgage was made to WFB "TOGETHER with the bond or note or obligation described in said mortgage."

If the note had also been transferred to WFB as a trustee, then the trustee owns the debt -- and not the certificate holders.  In other words, the certificate holders own nothing -- and were fraudulently put under the impression to have acquired assets which they never did, in violation of Securities and Exchange Commission rules.

In this case, Document #16 (page 7), WFB's attorney claims that WFB "is the holder of the note and mortgage encumbering the Property."

_____

[2] See New York Real Property, Article 8 - § 275(3);  See Article 8 - § 275(2)(a) refers to "the commercial practice of lenders trading or selling mortgages on the secondary

Pursuant to the Note, "anyone who takes this Note by transfer . . . is called the 'Note Holder.'"

If WFB is the "holder" as its attorney claims, that would confirm that the certificate holders or investors of the Series 2006-FR1 Trust never acquired possessory interest in the Note.

In its court filings, WFB never claimed to be the "owner" of the Note and Mortgage.

<u>Application of New York Commercial Code</u>

Furthermore, the Note is a negotiable instrument made in New York. Therefore, the laws of New York apply to the negotiation of said instrument.

Pursuant to New York Commercial Code, Section 3-201(1) "Transfer of an instrument vests in the transferee such rights as the transferor has therein, <u>except</u> that a transferee who has himself been a party <u>to any fraud or illegality</u> affecting the instrument or who as a prior holder <u>had notice of a defense or claim against it</u> cannot improve his position by taking from a later holder in due course."

Pursuant to New York Commercial Code, Section 3--302(1), "A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

a.    *<u>WFB had notice of a defense or claim against it</u>*

WFB claims that the Chestnuts defaulted "in or about April 2006."[3]

On page 2 of its judgment, the Court also stated that the Chestnuts defaulted in

_____

market."
[3] Case No.2:10-cv-04244-JS, Document #16, page 7 of 23.

April 2006.

The alleged Assignment from MERS to WFB was dated June 16, 2006 AFTER the alleged default was known to have taken place.

Therefore, WFB had "notice of a defense or claim against it" and that the Note was "overdue or has been dishonored."

Therefore, WFB did not obtain any rights held by the transferor -- pursuant to section 3-201(1).

WFB did not obtain any rights to enforce.

WFB's conduct cannot be in good faith.

There is no evidence that WFB paid any value for the Assignment other than the $10, if at all, mentioned in WFB's Exhibit D.

Therefore, WFB is NOT a holder in due course -- and WFB is not entitled to enforce the Note and Mortgage pursuant to New York law.

      *b.*    *<u>WFB's involvement in Fraud or illegality</u>*

Furthermore, there is sufficient evidence to prove WFB's involvement in fraud or illegality in the acquisition of the Assignment leading to the sale of Property on October 4, 2010.

The Assignment was dated June 16, 2006.

The notarization of the Assignment was made on October 11, 2006 -- four months later.

The notarization of a signature should have taken place at the time of signing the document, not four months later.

The recordation of the Assignment was made on June 20, 2007.

However, WFB's foreclosure action was commence in July 2006[4] -- about one year PRIOR to the recordation of the Assignment.

WFB's foreclosure action was fraudulent.

### *The Second Possibility: the Assignment is NOT valid*

Pursuant to New York Commercial Code, Section 3-201(3), "Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner. "

In the present case, WFB had never shown any negotiable instrument with an endorsement made to it.  Therefore, no negotiation or transfer ever took place.

WFB never acquired a right to enforce the Note or Mortgage pursuant to New York law.

The Assignment was recorded on June 20, 2007.

It could not possibly have been purchased by a Series 2006 FR1 Trust in 2007 because -- according to the terms of the PSA -- the trust closed in 2006.

In addition, U.S. bankruptcy Judge Robert E. Grossman in Central Islip, New York, wrote in a February 10, 2011 opinion that "MERS did not have authority, as 'nominee' or agent, to assign the mortgage absent a showing that it was given specific written directions by its principal."

There is no admissible evidence in this case to show that MERS was given written direction by its principal to assign the Mortgage.

As a result, the alleged MERS' Assignment to WFB was unauthorized and conveyed nothing.

The Chestnuts assert that the Assignment is invalid for reasons elaborated herein.

---

[4] Case No.2:10-cv-04244-JS, Document #16, page 6 of 23.

### *Without Covenant*

The assignment was made "without covenant" -- which includes without a "covenant of right to convey."

Therefore, there is no assurance by the covenantor that the grantor has sufficient capacity and title to convey the mortgage which he by his assignment undertakes to convey.

### *Inconsistent Dates*

In addition, the document has inconsistent or unreliable dates.

It was dated June 16, 2006.

It was allegedly notorized on October 11. 2006 -- when notorization should have taken place at the time of signing.

It was allegedly recorded on June 20, 2007.

The date itself is material because standing to sue must exist at the time the action is commenced.

WFB's foreclosure action was commenced in July 2006[5] -- about one year PRIOR to the recordation of the Assignment.

Therefore, WFB lacked standing at the time it commenced its foreclosure action.

### *MERS's Vice President?*

Further, the correct name and identity of the so-called MERS vice president who allegedly signed the Assignment cannot be verified.  There is no evidence regarding the signer's relationship to MERS, his authority to assign, or to certify that an assignment had occurred.

The Assignment shows an address for MERS in California.

The so-called Vice President's signature was allegedly notorized in Raleigh, North Carolina.

Upon information and belief, MERS does not have any offices in Raleigh, NC.

It is not clear why would an alleged Vice President of a California Corporation come to North Carolina to have his signature notorized.

According to an April 7, 2010 170-page-deposition transcript of Mr. William Hultman, Secretary of MERS, Inc., Mr. Hultman stated that he was delegated with the authority "to elect persons" to be officers -- assistant secretaries and vice-presidents -- of MERS. Exhibit 100, page 61.

Mr. Hultman stated that MERS does not have employees, and that he had appointed thousands of assistant secretaries. Exhibit 100, page 69 and 71

Mr. Hultman added that the MERS Corporate Resolution does not authorize the certifying officers to assign a promissory note, that MERS cannot sell the mortgage and receive consideration  or monetary value, and that MERS does not pay any taxes on properties' assets. Exhibit 100, page 121-122.

Mr. Hultman added that MERS does not have an ownership interest in the promissory note. Exhibit 100, page 138

Therefore, the statement in the Assignment that it is made "TOGETHER with the bond or note . . ." cannot be a true statement, especially since MERS's name is not found anywhere in the Note and there is no document on record to prove that MERS was authorized by Lender to assign the Note on its behalf.

There are no supporting documentation to prove that a valid assignment had taken place of either the Mortgage or Note.

---

[5] Case No.2:10-cv-04244-JS, Document #16, page 6 of 23.

The Chestnuts challenge the authenticity of the Mortgage and Note which were introduced as Exhibits A and B with the "Declaration of Renee Garcia" in Case No. 10-CIV-4244.

## C.  THE DECLARATION OF RENEE GARCIA

The "Declaration of Renee Garcia" submitted on October 14, 2010 as Document 17 in Case No. 10-CIV-4244 should be stricken from the record.

The Declaration was made by someone "associated with the firm of Hogan Lovells."

Upon information and belief, the affiant is an attorney for Hogan Lovells.

Upon information and belief, the affiant is not an authorized officer of WFB capable of speaking on WFB's behalf.

The affiant never claimed to have personal knowledge of the facts stated in the Declaration.

The affiant never stated that any of the exhibits presented are true and correct. The affiant only said that the copies are true and correct.

The affiant never validated the content or authenticity of any of the documents.

The Declaration was not made on personal knowledge of Renee Garcia, the affiant.

The affiant never attached sworn or certified copies of papers upon which the affiant relies upon.

The affiant never presented facts admissible in evidence.

The affiant never expressed willingness or ability to testify competently regarding the exhibits or statements made.

The affiant's declaration was never notorized.

Therefore, the declaration should be stricken for failing to meet the lawful requirement of an admissible declaration or affidavit.

The Chestnuts reserve the right to depose Renee Garcia.

WHEREFORE, the Chestnuts move the Court to strike the "Declaration of Renee Garcia" submitted on October 14, 2010 as Document #17 and its exhibits for the reasons cited herein.

### D.   STATUTE OF FRAUDS

Pursuant to New York Uniform Commercial Code - Part 2 - § 2-201(1), "Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."

There is no contract or any writing sufficient to indicate that a contract has been made between the Chestnuts and WFB.

There is no valid assignment made to WFB to any contract signed by the Chestnuts.

WHEREFORE, the Chestnuts move the Court to decalre that no valid contract exists between the Chestnuts and WFB, and to find WFB liable for violating New York's

Statute of Frauds.

## E.     NO VALID DEFAULT EXISTS

WFB's Exhibit C claims to be a "Notice of default."

Exhibit C was dated May 16, 2006 and claims that the "current creditor/owner" is "Wells Fargo Bank, N.A.."

However, the letter date precedes the Assignment date of June 16, 2006 and the Assignment's recordation of June 20, 2007.

Therefore, the statement made by HOMEQ SERVICING was not true, and there was no indication to its validity.

HOMEQ SERVICING committed fraud by circulating false and fraudulent documents through the mail and interstate commerce.

Furthermore, the Restatement (Third) of Property (Mortgages) Section 5.4(a) (1997) provides that:

> "[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise."

The Restatement cites the case of *Carpenter v. Longan*, 83 U.S. 271 (1827) which held that "[a]ll the authorities agree that the debt is the principal thing and the mortgage an accessory."

The comments to Section 5.4(a) state:

> *e.      Mortgage may not be enforced except by a person having the right to enforce the obligation or one acting on behalf of such a person.* As mentioned, in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation. For example, assume that the original mortgagee transfers the mortgage alone to A and the promissory note that it secures to B. Since the obligation is not enforceable by A, **A can never suffer a default** and hence cannot foreclose the mortgage. B, as holder of the note, can suffer a

default. However, in the absence of some additional facts creating authority in A to enforce the mortgage for B, B cannot cause the mortgage to be foreclosed since B does not own the mortgage.

If WFB acquired anything in the Mortgage Assignment, it would have been the mortgage alone. There was no admissible evidence on record or seen by the Chestnuts to prove that the Note was validly assigned to WFB.

Therefore, WFB can never suffer a default.

The Chestnuts deny the existence of default to WFB.

In the absence of a valid default, the foreclosure sale was unlawful.

WHEREFORE, the Chestnuts move the Court to declare the foreclosure sale of October 4, 2010 to be void and invalid and to annul any alleged debt or default that is claimed by WFB against the Chestnuts.

## F.    NO PERFECTED LIEN EXISTS

Pursuant to New York Lien, Article 3, § 44-A, "In an action to foreclose a mortgage upon such real property only such persons who shall have filed notices of lien prior to the filing of the notice of lis pendens in such action shall be deemed to be necessary parties to such action."

There is no evidence to prove that WFB ever filed a notice of lien.

WFB failed to provide the statutory basis upon which it acted to foreclose.

There was no perfected lien when WFB foreclosed and sold the property.

Therefore, WFB's conduct were unauthorized by law and the Chestnuts were harmed by the sale of their property and the current attempts to evict them from their home.

## G.   THE SUBROGATION DCTRINE

If the note and mortgage were actually sold and transferred to WFB, then the right of subrogation does not exist for a stranger to the transaction -- such as WFB.

Pursuant to the Doctrine of Subrogation, the voluntary payment of a debt by a stranger, without any agreement with the original borrowers (such as the Sparlins) that the security shall be assigned or kept for the benefit of the stranger (such as WFB), extinguishes the debt.

By the mere fact of purchasing the loan from Fremont, the alleged debt that existed prior to the Mortgage and at the time of its execution has been settled and zeroed out.


WFB never advanced any money to the Chestnuts after they allegedly purchased the loan.

In addition, the Chestnuts were never a party to any sale or purchase transaction between Fremont and WFB -- which took place solely by the entities named.

The terms of the Note and Mortgage related to the Property show that WFB was not a party to the Note, Mortgage, or the loan transaction.

Therefore, it is clear that WFB was a stranger to the transaction between the Chestnuts and Fremont.

The right of subrogation does not exist for strangers to the transaction.

The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being

compelled to do so for the preservation of any rights or property of his own. Please review the following for affirmation that the right of subrogation does not exist in this matter: *Henningsen v. United States Fidelity & G. Co.*, 208 US 404; 52 L. Ed 547, 28 S. Ct. 389; *Prairie State National Bank v. United States*, 164 US 227; 41 L. Ed. 412; 17 S. Ct. 142; *Aetna L. Ins. Co. v. Middleport*, 124 US 534; 31 L. Ed. 537; 8 S. Ct. 625; *McBride v. McBride*, 148 Or 478 36 P 2d 175.

The promises made under the Note and Mortgage were made to "Lender" which is Fremont Investment & Loan.

Since the loan was sold, then the purchaser paid any alleged debt that might have existed on the Note.

There was nothing in the Note and Mortgage that made WFB a surety so that it might be subrogated to the rights of Fremont.

WFB was merely a volunteer and is not lawfully entitled to foreclose or collect on the alleged debt.

The principles of subrogation do not apply in favor of volunteers. They can obtain the right of substitution only by contract. The Chestnuts never signed any such contract with WFB.

Any lien on the property that might have existed was nullified or released when Lender/creditor was paid when it sold the loan.

If a debt currently exist, that debt cannot be satisfied by a foreclosure sale because there was no perfected lien in favor of WFB that is recorded.

Once the Lender was paid, borrower's debt was extinguished, and the lien created by the Mortgage is no longer in effect.

Upon information and belief, WFB never claimed that a valid lien exists or has proven that a valid recorded lien exist in its favor.

Upon information and belief, WFB never proved that it actually suffered damages.

Furthermore, WFB never presented the Chestnuts with an accounting for third-party payments -- such as verification to how much was paid for the sale of the loan.

**H.    LACK OF PROPER NOTICES**

WFB's Exhibit R was a Notice of Sale.

The Notice of Sale had no date on it.

The Recorder's time for the Notice of Sale was stamped on the back of the Notice of Sale as March 9, 2011 @ 2:29PM.

However, the foreclosure sale was held on October 4, 2010 prior to the Notice of Sale being recorded.

Furthermore, the Notice of Sale states that the Pooling and Servicing Agreement was dated February 1, 2006 -- which is a date that precedes the alleged Assignment.

Therefore, the Assignment could not have been made to the Trust AFTER the Trust had already been closed.

WFB failed to properly record documents such as the Assignment and Notice of Sale.

WFB acted in violation of the Pooling and Servicing Agreement for the trust.

**I.    FRAUDULENT SALE OF PROPERTY**

Inaccurate and even fraudulent mortgage documentation has been the subject of numerous regulatory, law enforcement, and media investigations.

If the chain of title is clouded by the failure to record an assignment of mortgage, or by recording a fraudulent assignment, then a sale cannot be valid.

The Chestnuts contest the validity of the Assignment introduced by WFB as Exhibit D.

The Chestnuts move the Court to make a clear statement that a party initiating foreclosure must have its security instrument, or a VALID assignment, timely recorded.

Failure to prove a valid assignment, or failure to timely record a transfer of interest in realty, is against public policy as it would undermine the depressed real estate market even further -- not to mention undermining the rights of true property owners.

The evidence in this case clearly prove that when WFB initiated foreclosure sale, it lacked authority to do so because it was not the holder of the mortgage.

WFB committed fraud when it initiated the sale, being unauthorized to do so, and when it introduced fraudulent assignment of mortgage to convey to Court the false impression of being a "holder" and "owner" of the underlying debt.

Furthermore, WFB never provided any evidence to prove that it is entitled to initiate foreclosure as an alleged trustee of a securitized trust.

Under the terms of the Pooling and Servicing Agreement, "Fremont was the only party to bring foreclosure action in the event of default" -- according to forensic accountant David P. Sweeney. See *HSBC Bank NA v. Palladino*, 2011 Ill. App. Unpub. LEXIS 931, No. 2-10-0742 (April 29, 2011).

Wherefore, the Chestnuts move the Court to sanction WFB and its law firm for

violating Rule 11 of the Rules of Civil Procedure and for committing fraud upon the court.

The Chestnuts were harmed by the fraud evidence by the sale of their property by WFB.


## J.    LACK OF STANDING

The doctrine of standing is designed to ensure that only those parties with a real interest in the outcome of the controversy bring suit.

In order to foreclose, WFB should have had a valid beneficial interest in the mortgage.
It did not.

Therefore, WFB lacked standing to foreclose, and its foreclosure action is fraudulent.

## CONCLUSION

Someone is going to get a free house. Will it be the disinterested non-creditor Defendant WFB who misbehaved and lied in the process of foreclosing on the alleged loans and withheld accounting information? Or will it be the homeowners Plaintiffs who have down payments, monthly payments, maintenance, taxes and insurance, as well as furnishings and home improvements in the home?

Plaintiffs allege that the claim of Defendant to an interest in the property adverse to Plaintiffs is without any merit whatsoever, and said Defendant has no legal or equitable right, claim, or interest in said property.

Plaintiffs therefore seek a declaration that the title to the subject property is vested

in Plaintiffs alone and that the Defendant herein be declared to have no estate, right, title or interest in the subject property and that said defendant be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

The Courts should prevent invalid foreclosures, and should not encourage fraudulent foreclosures.

Pursuant to the Restatement (Second) of Contracts §347, "the injured party has a right to damages based on his expectation interest as measured by

(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

(b) any other loss, including incidental or consequential loss, caused by the breach, less

(c) any cost or other loss that he has avoided by not having to perform."

As a result of WFB's unlawful sale of the Chestnuts' Property, the Chestnuts had suffered damages in the amount of the value of the Property at the time it was sold, in addition to the monetary damages which had been accrued to litigate against WFB and its fraudulent foreclosure action.

WHEREFORE, the Chestnuts move the Court to restore them to the time before the fraudulent sale of property by granting them title to property free and clear, and to declare that WFB has no title, right, or interest in Property, and to declare the Property sale of October 4, 2010 and the judgments of foreclosure null and void.

WHEREFORE, Plaintiffs moves the Court to vacate its judgment of March 2, 2011 (Document #32) and all of its orders in WFB's favor and to rule as follows:

- For a declaration and determination that Plaintiffs are the rightful holder of title to the property and that Defendant herein be declared to have no estate, right, title or interest in said property; and

- For a judgment forever enjoining said Defendant from claiming any estate, right, title or interest in the subject property; and

- To declare the foreclosure sale to be null and void; and

- For costs of suit herein incurred; and

- For such other and further relief as the court may deem proper.

Respectfully submitted,

Rodney Chestnut                           Dawn Chestnut

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and exact copy of the above has been furnished by U.S. Mail on this 9th day of September 2011 to the following:

Allison J. Schoenthal, Esq.
Renee Marie Garcia, Esq.
Victoria McKenney, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Shapiro, DiCaro & Barack, LLC
105 Maxess Road, Suite N109
Melville, N.Y. 11747

_____
Rodney Chestnut